# Report of Findings

**Report Date:**      December 18, 2017

**Case Number:**      2:17-cv-01920-DCN

**Case:**             Fanny Marchevsky & Alejandro Otman vs. United Airlines, Inc.

**Prepared for:**     Tim M. McKissock & Erin R. Stuckey

Nelson Mullins Riley & Scarborough LLP
Meridian, 17th Floor
1320 Main Street
Columbia, SC 29201
803-255-5528

**Prepared by:**      Helen Zienkievicz



2119 Riverwalk Drive, #134
Moore, OK 73160
405-367-8025
405-386-6522

**EXHIBIT E**

1

Opinion Report Pertaining to Case No. 2:17-cv-01920-DCN
Fanny Marchevsky and Alejandro Otman vs. United Airlines, Inc.

Prepared by Helen Zienkievicz of Cabin Safety Consultants

**Purpose:** This report provides facts, opinions, and the basis of the opinions regarding the actions of United Airlines, Inc. (UA) and its employees who interacted with UA passenger, Fanny Marchevsky on April 27, 2016 at Chicago O'hare International Airport (ORD).

**Introduction:** I have been retained by the Defendant United Airlines, Inc. through the legal counsel of The Law Firm of Nelson Mullins Riley & Scarborough LLP as a consultant in the field of commercial aviation and aircraft cabin safety, to specifically address the action of United Airlines and its employees during the airline's operation and to analyze the particular facts of this case. My opinions are based on my education, training, experience and expertise in the commercial airline industry and in aircraft cabin safety, as outlined in my CV (Appendix 1) and a review of support data detailed in Appendix 2, such as the pleadings, discovery, deposition transcripts, company guidelines, policies, procedures, protocols, training documents and a phone interview that I had with UA flight attendant (FA) Kevin Jones on December 8, 2017. In addition, I have reviewed and relied on the Code of Federal Regulations (CFRs), federal department and agency regulations and documents, and Federal Aviation Administration (FAA), and applicable commercial aviation and healthcare industry standards, practices and recommendations.

**Opinions with Basis and Reasoning:** Based on a review of the material and information provided to me to date, my cabin safety expertise, and healthcare training and experience I have formed the following opinions as they relate to this case.

1. **There is no evidence that Ms. Marchevsky's injury on April 27, 2016 was caused by the actions or inactions of a United Airlines, Inc. flight attendant, or any other employee or agent of United Airlines, Inc.**

    A) I have reviewed the documentation and found Ms. Marchevsky's version of events to be inconsistent with all contemporaneous records of the event and the statements of the flight crew. No objective evidence supports Ms. Marchevsky's version of events. (PNR, Accident Incident Report and witness statements.)

    B) According to Kevin Jones, the UA flight attendant who interacted with Ms. Marchevsky immediately after the incident, he was in the mid-galley of the B757-300 aircraft during the boarding process of UA Flight (Flt.) 761 which was scheduled to depart O'hare International Airport (ORD) for San Francisco International Airport (SFO) at 8:55 AM CDT on April 27, 2016. Mr. Jones was first made aware of the incident when he heard some commotion just behind the mid-galley on the right side of the aircraft. He saw Ms. Marchevsky, seated in aisle seat 8D, just behind the mid-galley wall on the right side of the aircraft. She was holding her hand on her forehead and commented that a passenger, who was putting her bag in the overhead bin, had hit Ms. Marchevsky's head with the bag. The female passenger who caused the event and passengers, seated near Ms. Marchevsky, confirmed this information to Mr. Jones (Kevin Jones Interview).

    C) The female passenger, who admitted to Mr. Jones that her actions and bag caused this incident, immediately commented to Mr. Jones that she was a doctor and that Ms. Marchevsky was fine. She then quickly proceeded to walk to the rear of the aircraft. Mr. Jones reported that because his immediate concern and response was to check on Ms. Marchevsky's condition he didn't take note of this passenger's appearance or make an attempt to converse with her further. Instead he immediately addressed Ms. Marchevsky who reported she was fine and declined his help or desire to seek medical attention. At that

2

time, Mr. Jones did not observe any blood, bleeding or bruising on Ms. Marchevsky's forehead or head (Kevin Jones Interview).

2. **There is no evidence that a UA flight attendant, or any other employee or agent of United Airlines, Inc., insisted that Ms. Marchevsky walk off an airplane, abandoned her in the terminal, or failed to provide her any further attention as alleged in Plaintiff's complaint.**

    A) Mr. Jones recalled that he spoke with Ms. Marchevsky at least three times after the bag hit her head. He recalled that just before the plane was scheduled to depart Ms. Marchevsky mentioned, for the first time, that she felt dizzy and wished to know which passenger dropped the bag on her head. He did not recall her reporting any other physical problems at that time or seeing an open wound or blood on her forehead or anywhere else. He offered her water and suggested that she might want to deplane and to get checked out by airport medical staff. She initially declined but after his third conversation with her she elected to get off the aircraft so she could obtain a medical evaluation. Mr. Jones notified the flight attendant purser of Ms. Marchevsky's decision and her need for medical attention.

    B) According to Ms. Marchevsky's PNR and UA incident report UA personnel contacted the Chicago Fire Department (CFD) EMS to request medical assistance for Ms. Marchevsky. The CFD Incident Report indicates that the EMS personnel were dispatched to the scene at 9:01:59 AM (CDT).

    C) With few exceptions, such as the risk of spreading a communicable disease, a medical or mental condition or a perceived intent that could pose a safety or security risk to the passenger, other passengers, or to the operation of the flight, industry regulations, practice, and standards do not permit flight attendants or customer service employees, representatives or its agents to force a passenger to seek medical attention.

3. **There is no evidence that a UA flight attendant, or any other employee or agent of United Airlines, Inc., acted in a negligent, careless, reckless, willful or wanton way towards Ms. Marchevsky on April 27, 2016 or that a representative of UA fail to properly report the incident as alleged in Plaintiff's complaint.**

    A) Objective evidence indicates that paramedics were contacted and documentation was made to Ms. Marchevsky's Passenger Name Record (PNR) contemporaneously with the incident. Evidence also indicates that UA ORD customer service supervisor Tamera Payne reported the incident by submitting a UA Accident Incident Report (AIR) (United_000037) approximately twenty minutes after the CFD EMS left the boarding area (Page 1 of 2 City of Chicago Fire Department report) to take Ms. Marchevsky to the hospital.

    B) Further notification of Ms. Marchevsky's incident was made by UA Phyllis Davis, (United_000037) currently listed on a UA website as Reservation Premium Specialty Desk, to UA employee Cindy Williams (currently listed on UA website as Risk Manager) within 90 minutes (10:26 AM (CDT) ) of the ORD EMS notification of the incident.

4. **Commercial aviation industry standards, policy and practice does not include contacting family members or the person who purchased a ticket for a passenger should that passenger deplane or fail to board a flight due to illness, injury, misconnections, etc.**

    A) To do so could be viewed as an infraction of the passenger's privacy and could subject the passenger and the airline to potential legal action. 14 CFR 243.9c states; "The contact information collected pursuant to section 243.7(a)(2) of this part shall be kept confidential and released only to the U.S. Department of State,

3

the National Transportation Safety Board (upon NTSB's request), and the U.S. Department of Transportation pursuant to oversight of this part". 14 CFR 243.9d states; "the contact information collected pursuant to section 243.7(a)(2) of this part shall only be used by covered airlines for notification of family members or listed contacts following an aviation disaster"....

B) Based on my experience as a safety investigator, customer service supervisor and general manager once medical personnel have arrived, the airline expects them to take over the care of the passenger and determine what actions need to take place and who, if any, need to be notified. Due to HIPAA regulations medical care providers and agencies generally will not advise airline personnel of the status of the former passenger, now patient.

5. **There are a number of allegations in the filed Complaint, the newspaper article and comments made by both Plaintiffs in deposition that are not supported by objective evidence.**

   A) The Plaintiff's complaint against United Airlines, Inc. states that the incident occurred mid-flight on a UA flight from Charleston, SC. to Chicago, IL, yet PNR documentation and employee reports provided by UA indicate that the incident occurred during the boarding process of UA flight 761 at ORD.

   B) Mr. Otman's description of the incident was based on what he recalls his mother telling him about the event and not based on any witnessed action or conversation that he had with his mother immediately after the incident. In his deposition he pointed out that Ms. Marchevsky had erroneously answered a number of questions in her deposition including, but not limited to: the town she was born in, her education, the type of home she resides in, if she holds a driver's license in the state she now resides, where she was seated at the time of the incident, etc.

   C) CFD EMS reports indicate that Ms. Marchevsky complained of dizziness, not vertigo as alleged. Their reports make no mention of any open wounds or blood visible on Ms. Marchevsky's head or forehead. The CFD EMS report also indicates that a blood sugar test was performed during their initial assessment. Obtaining a "finger-stick blood sugar" involves pricking the person's finger to withdraw a small amount of blood in order to determine blood sugar (glucose) level. It has been my experience as a nurse practitioner that there are times where the person may bleed from the site that was pricked sometime after the test and not be aware of the bleeding until they see blood on their clothing.

   D) Mr. Otman stated that he was not made aware of his mother's injury until contacted by a friend in SFO who reported that Ms. Marchevsky was in the hospital and that this friend had booked him a seat on the next UA flight from CHS to ORD (Otman Deposition). Paragraphs 26 & 27 of the Plaintiffs' Complaint document alleges that it wasn't until Mrs. Marchevsky failed to arrive on UA Flt. 761, which was scheduled to arrive at 11:38 AM (PDT), which would be 2:38 PM (EDT), that this friend started to investigate what happened to Ms. Marchevsky and notified Mr. Otman that she was in the hospital.

   E) This account is inconsistent with the objective facts that were produced by the Plaintiff. Such facts indicate that at 11:48:09 (EDT), which would be 10:48:09 AM (CDT), almost three hours prior to the scheduled landing of the flight Ms. Marchevsky was supposed to be on, Mr. Otman received an email from UA indicating he had a confirmed flight reservation from Charleston (CHS) to ORD for UA Flight 399 scheduled to depart at 1:04 PM (EDT).

4

F) Flight data obtained from www.flightstats.com/v2/historical-flight/UA/761/2016/4/27/705222062 indicates that on April 27, 2016 Flight 761 departed the ORD gate at 9:12 AM (CDT), took off and returned to an ORD gate at 10:08 AM (CDT). It took off for a second time at 11:09 AM (CDT) and arrived at the SFO gate at 1:43 PM (PDT) which would be 3:43 PM (CDT) and 4:43 PM (EDT) which was almost 5 hours <u>after</u> Mr. Otman received a confirmation email from UA that he was booked on a flight from Charleston, SC (CHS) to ORD and over 3.5 hours <u>after</u> the flight that Mr. Otman flew on from CHS had departed for ORD.

6. United Airlines is required to comply with CFRs and other regulatory requirements concerning background testing, employee training and oversight as well as the operation and safety of its airline. Numerous US Federal and State agencies approve, audit and provide oversight of United Airlines, its personnel, training and operation. Such agencies include, but are not limited to, the US Department of Transportation, the Federal Aviation Administration, the Transportation Safety Administration, the Occupational Safety and Health Administration, the Environmental Protection Agency, etc. In addition to meeting these requirements and standards, United Airlines voluntarily submits to the International Airline Transport Association (IATA) guidelines and to IATA Operational Safety Audits (IOSA) (www.iata.org) on a regular basis. No evidence has been presented that United Airlines, Inc. did any of the following acts that are alleged in the Plaintiff's complaint:

a) Failed to properly and/or adequately screen, train and supervise its flight attendants;
b) Was negligent in hiring, training or supervision their employees;
c) Failed to conduct a proper and adequate background check or review of its flight attendants;
d) Failed to have or enforce adequate policies and procedures;
e) Failed to have an adequate safety program for the safety and protection of the public to protect the public from negligence, carelessness and/or recklessness of its flight attendants;
f) Failed to act as a reasonable and prudent person would have acted under the circumstances.

The opinions rendered in this report are stated to a reasonable degree of certainty in the field of aviation, aircraft cabin safety and my healthcare and nursing training and experience. I reserve the right to amend my opinions, and this report, should new information pertaining to this case be made available to me.

*[signature]*                                                              Date: December 18, 2017

Helen Zienkievicz of Cabin Safety Consultants


Appendix 1: Helen Zienkievicz CV
Appendix 2: List of documents reviewed for this report
Appendix 3: Fee Schedule
Appendix 4: Four year testimony history for Helen Zienkievicz
Appendix 5: List of publications by Helen Zienkievicz